UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CONSTANCE R. RAFFERTY,<br><br>Plaintiff,<br><br>v.<br><br>KEYPOINT GOVERNMENT SOLUTIONS, INC., and JOINT TECHNICAL SERVICES, LLC,<br><br>Defendants. | Case No. 4:16-cv-00210-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

This matter comes before the Court on two motions: Plaintiff Constance Rafferty's Motion to Reopen Discovery and Compel Compliance with Discovery Obligations (Dkt. 48) and Defendant KeyPoint Government Solution's ("KeyPoint") Motion for Protective Order (Dkt. 47). The Court held oral argument on these two Motions on May 23, 2018. For the reasons outlined below, the Court finds good cause to GRANT the Motion to Reopen Discovery and DENY the Motion for Protective Order.

# II. BACKGROUND

*A. Facts Relevant to Complaint*

Defendant Joint Technical Services, LLC ("JTS") hired Rafferty as a Program Manager in March 2010. JTS is a New Mexico company, but it does a substantial amount of business in Idaho, including employing individuals in and around Idaho Falls, Idaho, to process security clearance applications for the U.S. Department of Energy Idaho

("DOE-ID") related to the Idaho National Laboratory ("INL"). JTS is a direct subcontractor with DOE-ID's Personnel Security Office ("PERSEC") that is employed to process security clearance background checks for the INL. JTS works in the same office suite as DOE-ID and interacts with PERSEC employees frequently. As a Program Manager for JTS, Rafferty herself was required to pass a security clearance periodically. She successfully passed this review while working for JTS for the last time on June 30, 2014.

Rafferty asserts a variety of grievances about her employment at JTS. She first claims she was cited for minor procedural security issues and other trivial concerns initiated by a DOE-ID employee whom she had investigated after he was accused of making racial comments. Second, she asserts JTS employees did not receive her "disabilities" very well. Specifically, she asserts she was suffering from insulin resistance that caused additional health issues, including sleep deprivation. In addition, she suffered from some mental health problems. Finally, Rafferty alleges she was "physically assaulted" by an DOE-ID employee, Edith Ruiz, on July 3, 2014, after Rafferty took down signs Ruiz placed in the women's restroom that Rafferty thought were offensive to people with disabilities. Rafferty reported the incident. Ruiz had also made allegations about Rafferty. As a result of this incident, Rafferty's supervisor, Patrick Lashinski, gave Rafferty the option of resigning or being terminated. Rafferty chose to resign from JTS on July 10, 2014.

After she resigned, Rafferty began searching for new employment in the same field. On September 26, 2014, KeyPoint offered Rafferty a position as an Investigator 2.

Like JTS, KeyPoint also employs individuals in and around Idaho Falls, Idaho, to conduct security clearance background checks, often for INL employees. Rafferty accepted the position immediately. Like with her position at JTS, Rafferty also needed to pass a background check for this position with KeyPoint. To pass the background check, Rafferty was required to complete and submit the electronic version of an SF86 form, also known as an Electronic Questionnaires for Investigations Processing or "e-QIP." Plaintiff submitted her e-QIP directly to the Office of Personnel Management ("OPM") on October 20, 2014. She then began training on December 1, 2014. As part of her training, Rafferty was required to review files at DOE-ID PERSEC. While visiting DOE-ID PERSEC, some of Rafferty's former co-workers discovered Rafferty was working at KeyPoint. Rafferty alleges these former co-workers acted strange during the visit.

On December 18 or 19, 2014, OPM contacted KeyPoint to inform it that Rafferty's security clearance had been suspended. Rafferty could not continue her training with KeyPoint without this security clearance. KeyPoint then terminated Rafferty. Rafferty believes JTS, or DOE-ID at the urging of JTS, contacted KeyPoint to provide derogatory information about her, including information about her alleged disabilities, which she had not told KeyPoint about. Rafferty claims KeyPoint decided to terminate her because of those communications and because of KeyPoint's belief that she suffered from a disability, and that it used the fact that OPM suspended her clearance as an excuse to terminate her. During discovery, Rafferty obtained a letter from OPM stating that the agency had "suspended Ms. Rafferty's access, as part of the adjudicative

process, pending the outcome of her scheduled RSI[1] (case #1500421324)." Dkt. 51-8, at 2. Rafferty alleges that, after OPM received notification that KeyPoint had terminated her, OPM discontinued "all work on the RSI." *Id.* Based on this evidence, Rafferty asserts OPM suspended her access as a formality rather than because she had any real problems that would prevent her from passing a background check and that, if KeyPoint had not terminated her, OPM would have continued working on her RSI and ultimately reinstated her access. Accordingly, Rafferty argues that KeyPoint's reasons for terminating her are illegitimate.

After KeyPoint terminated her, Rafferty filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). KeyPoint undertook an internal investigation in response to the complaint. Michael Hegedus, KeyPoint's Corporate Security Director, conducted the investigation. At the end of his investigation, he produced a one-page report, which KeyPoint's counsel used in responding to the EEOC complaint. KeyPoint claims attorney-client privilege protects this report.

In early 2016, Rafferty received right to sue letters. Rafferty then filed this case against JTS and KeyPoint. She asserts the following claims against JTS: (1) retaliation in violation of federal law; (2) retaliation in violation of the Idaho Human Rights Act

---

[1] The parties never define "RSI." However, the Court believes they are referring to a "Reimbursable Suitability/Security Investigation," which "is not a background or criminal investigation." Rather, it is an investigation an agency can initiate when it needs additional information "to resolve issues (such as alcohol or drug rehabilitation or credit) that might fall outside the normal scope of an investigation; to establish a history or pattern of behavior; or to obtain other information related to suitability or security." *See* https://www.opm.gov/faqs/QA.aspx?fid=dced14fa-6c18-418f-a4d6-ec43e2554718&pid=0e896aab-d836-4bcf-9bc7-9b9042c125b2.

("IHRA"); (3) intentional interference with prospective economic advantage; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. She also asserts the following claims against KeyPoint: (6) discrimination based on perceived disability in violation of the Americans with Disabilities Act Amendments ("ADAA"); (7) discrimination based on perceived disability in violation of the IHRA; (8) disability discrimination in violation of the ADAA; and (9) disability discrimination in violation of the IHRA.

### B. Facts Relevant to Pending Motions

The parties originally stipulated to a discovery plan under which fact discovery would end July 28, 2017. However, the parties subsequently stipulated to extending this deadline several times. Fact discovery ended near the end of November 2017. Rafferty now asks the Court to reopen discovery for 60 days and to compel Defendants to produce certain discovery. Specifically, Rafferty requests the following:

1. That Angela Deabler's deposition be reopened and KeyPoint directed to adequately prepare her for Rule 30(b)(6) topics;

2. That KeyPoint be ordered to provide the information from or contained within the KIPPTS database regarding Plaintiff;

3. That KeyPoint be ordered to identify who had discussions with DOE-ID PERSEC as identified in the telephone records; and

4. That KeyPoint be ordered to identify the facts and persons having knowledge regarding Plaintiff's SF86 as set forth in KeyPoint's EEOC response.

KeyPoint, in turn, seeks a protective order preventing Rafferty from discovering more information regarding document No. D000028 and the internal investigation KeyPoint

undertook in response to Plaintiff's filing of her EEOC complaint. This request for a protective order is closely related to Rafferty's fourth request set forth above.

Most of the disputes that are the subject of the instant motions stem from the November 2017 deposition of KeyPoint's 30(b)(6) representative, Angela Deabler. At that deposition, the parties discovered that KeyPoint had not produced all of its relevant emails after Deabler referenced an email from Maureen O'Connor, a KeyPoint employee, that KeyPoint had yet to produce. After the deposition, KeyPoint conducted a new search of its records and, on December 22, 2017, produced another 236 pages of documents to Rafferty. It also noted that there were another 3,000-4,000 pages of attachments to those emails that it would only produce upon request. KeyPoint asserts that it did not previously identify and produce these emails because Deabler periodically archives her emails, a process that moves them outside of KeyPoint's server. Thus, KeyPoint's previous searches of its server did not reveal these emails. In addition, KeyPoint broadened the scope of its search to identify emails that mentioned Rafferty in any attachment to the email (instead of just in the main text of the email). On December 27, 2017, KeyPoint produced another 177 pages of documents, including a KeyPoint personnel policy. On January 9, 2018, Rafferty identified 26 email attachments she wanted KeyPoint to produce. KeyPoint produced these 26 attachments, totaling 370 pages, most of which were spreadsheets. Importantly, some of the newly produced emails and attachments discussed something called "KIPPTS," an internal KeyPoint database that Rafferty claims she had not heard about up until that point.

In light of these newly produced emails, Rafferty sought to reopen discovery. The Court held an informal discovery dispute conference with the parties to discuss this request. At the end of that conference, the parties agreed to reopen discovery for certain limited purposes. Specifically, the parties agreed to depose O'Connor, and KeyPoint agreed to produce one email with revised redactions and the cell phone numbers for O'Connor and Deabler.

The parties complied with these additional discovery obligations. Significantly, at O'Connor's deposition, Rafferty's attorneys questioned O'Connor about KIPPTS. O'Connor described KIPPTS as an internal KeyPoint database in which KeyPoint would have kept information about its employee's "PII and investigative information." O'Connor was unaware if anyone had ever searched KIPPTS for information about Rafferty. However, she also testified that this database no longer exists; KeyPoint terminated its use in July 2015.

Despite this additional discovery, Rafferty asserts that she continues to be prejudiced by KeyPoint's untimely production of relevant emails and KeyPoint's failure to properly comply with its other discovery obligations. Accordingly, she filed the pending Motion to Reopen Discovery. At the Court's direction, KeyPoint simultaneously filed the pending Motion for Protective Order.

### III. Legal Standard

Once the deadline for completing discovery set forth in the Case Management Order has passed, a party must show good cause to justify reopening discovery. Fed. R. Civ. P. 16(b). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of

the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citation and internal quotation marks omitted). "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," but the Court should focus its inquiry "upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609.

Federal Rule of Civil Procedure 26(b) generally allows "[p]arties [to] obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b). The term "relevant" is further defined as information that is "reasonably calculated to lead to the discovery of admissible evidence," and it "need not be admissible at trial." Fed. R. Civ. P. 26(b)(1). If a party fails to provide adequate discovery responses, the other side can move for an order compelling discovery under Federal Rule of Civil Procedure 37(a) after meeting and conferring with the opposing side. The court must deny a motion to compel if the information requested falls outside of the scope of permissible discovery. *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438–39 (9th Cir. 1992).

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment,'" because "wide access to relevant facts serves the integrity and fairness of the judicial

process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). However, under Rule 26, the Court may, for good cause, issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(c)(1)). "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

## IV. ANALYSIS

### A. Motion to Reopen Discovery

In sum, the Court finds good cause under Rule 16 to reopen discovery for 60 days. The Court bases this decision primarily on Rafferty's diligence. Although several months have passed since discovery closed, Rafferty has consistently remained diligent. As outlined above, KeyPoint produced several hundred pages of additional discovery in late December. Rafferty timely reviewed these emails and requested specific email attachments. In the month that followed, the parties conferred with each other and the Court to reach an agreement to remedy any prejudice created by the late production of documents. Over the next two months the parties executed the agreed upon additional discovery. At the end of that process, when Rafferty still found herself prejudiced, she contacted the Court again. Instead of holding an additional informal conference, the

Court had the parties formally brief the issue, which added another month and a half to the timeline. At no point during this timeline did Rafferty waiver in her persistence.

The Court also finds Rafferty was diligent while discovery was still open. Many of the complaints Rafferty has raised stem from KeyPoint's failure to provide full or accurate information while discovery was still open. For example, as explained in full in the next section, KeyPoint did not provide full and accurate information about the origin of certain quoted language contained in its response to Rafferty's EEOC complaint. Although Rafferty attempted to discover some information about this quoted language, she asserts she would have made more requests if KeyPoint had timely provided full and accurate information about the quoted language.

The Court also finds good cause to reopen discovery because it is likely Rafferty has been prejudiced by KeyPoint's late production of discovery. Because Rafferty received emails after the close of discovery, she only had the opportunity to ask O'Connor about them, who may not be the most knowledgeable person about those emails. Rafferty should have the opportunity to more fully question KeyPoint about those emails.

In addition, it was not until O'Connor's deposition that Rafferty learned of KIPPTS. KeyPoint asserts that Rafferty should have known about KIPPTS and should have asked about it previously because it produced a document during discovery that referenced KIPPTS. Specifically, KeyPoint produced an "employee status change form" that indicates KeyPoint terminated Rafferty on December 19, 2014. Dkt. 51-15. Next to Rafferty's name, there is a line on the form that reads "KIPPTS Updated:" Nothing was

written on this line. This single inconspicuous mention of KIPPTS on a single document produced in discovery was not enough to put Rafferty on notice of the existence of KIPPTS such that she should have specifically sought discovery on it.

Moreover, the Court finds KeyPoint will not suffer prejudice if the Court reopens discovery. There will be some delay in resolving this case and KeyPoint will have to spend some additional time and effort to comply with Rafferty's additional discovery requests. However, this burden is minimal and the need to ensure Rafferty obtains full and fair discovery outweighs it. Moreover, KeyPoint asserts it has already produced all of the information it has to Rafferty. If this is true, KeyPoints' efforts in answering additional discovery requests will be minimal.

The Court finds re-opening discovery generally for 60 days is the best course of action because, if it were to only grant very specific discovery requests, the parties would inevitably disagree about the scope of the Court's order and Rafferty may return to this Court again claiming she continues to be prejudiced. Therefore, the Court will give Rafferty 60 days to obtain whatever she needs.

To clarify any confusion as to Rafferty's specific discovery requests, Rafferty may reopen Deabler's 30(b)(6) deposition, or request that KeyPoint designate another individual to represent it at a 30(b)(6) deposition. This designee should "be prepared to testify about information known or *reasonably* known to" KeyPoint. *Standard Fabrics Int'l, Inc. v. Dress Barn Inc.*, No. 2:15-CV-08437-ODW (PJW), 2017 WL 240072, at *6 (C.D. Cal. Jan. 19, 2017). Rafferty must again "describe 'with reasonable particularity the matters on which examination is requested.'" *Id.* (quoting Fed. R. Civ. P. 30(b)(6)).

Rafferty's main complaint about Deabler's deposition appears to be Deabler's lack of information regarding any communications about Rafferty between KeyPoint and (1) OMP, (2) any JTS employee, or (3) any DOE-ID PERSEC employee. The Court will not specify how exactly Deabler, or any other designee, must prepare for a 30(b)(6) deposition. However, if Rafferty pursues this information again in a 30(b)(6) deposition, any KeyPoint designee must be able to certify that they made reasonable efforts to speak to everyone reasonably likely to have relevant information—whether currently employed by KeyPoint or not. *See Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (holding that the fact that "a corporation no longer employs individuals who have memory of [relevant] events" does "not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources").

Rafferty can also seek discovery outside a 30(b)(6) deposition regarding who, if anyone, at KeyPoint had discussions with JTS, DOE-ID, or OPM about Rafferty. In addition, Rafferty can pursue information about, or from, KIPPTS. Finally, Rafferty can seek information about KeyPoint's alleged access to Rafferty's SF86 background check form, including Hegedus's one-page report. This report and related information is the subject of KeyPoint's Motion for Protective Order, which will be address in full below.

## B. Motion for Protective Order

Throughout this case, KeyPoint has insisted that it did not have access to Rafferty's SF86—the form she sent to OPM to initiate her background check that contained information about her departure from JTS and her physical and mental health

problems. As evidence of KeyPoint's access of this document, Rafferty points to a line in KeyPoint's response to Rafferty's EEOC complaint, which KeyPoint sent to the EEOC on November 13, 2015. Specifically, this document stated, "On December 18, 2014, OPM suspended Ms. Rafferty's clearance and access due to 'significant issues developed on SF86' since her previous periodic review of her clearance." Dkt. 48-5, at 2–3. Rafferty argues this document quotes from another document that KeyPoint has never produced. Specifically, Rafferty believes this quote came from Hegedus' internal investigation report, over which KeyPoint has claimed privilege. Rafferty argues KeyPoint has withheld the fact that it accessed her SF86 and the true reason for her termination. She insists KeyPoint could not know there were "significant issues" with her SF86 unless it—improperly—accessed the form. She asks to see Hegedus' investigation report and for more time to conduct additional discovery about the basis of the "significant issues" language.

Rafferty asserts that while discovery was open she attempted to discover information about the "significant issues" language through interrogatories and requests for production. These attempts were unsuccessful. Rafferty's counsel also specifically asked Deabler about the "significant issues" language during her 30(b)(6) deposition. Deabler stated she did not know where the quoted language came from. Rafferty argues she was unable to make other attempts at discovering information about the "significant issues" language because KeyPoint's explanation of the at-issue language was a moving target. It is now apparent that the language came from Hegedus's internal investigation report. However, at different points, KeyPoint had asserted that the quoted language was

merely a stylistic choice by the lawyer who drafted the EEOC complaint response and that the quoted language came from a telephone conversation. Based on these facts, the Court finds Rafferty was diligent and would have made additional discovery requests regarding the language had KeyPoint revealed the true origin of the "significant issues" language earlier. The Court will therefore permit Rafferty to conduct additional discovery about this language.

One question remains: Whether Rafferty can discover Hegedus's internal investigation report, which KeyPoint claims is privileged under the attorney-client/work-product doctrine.[2]

Under Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).[3] "Such documents may only be ordered produced upon an adverse party's demonstration of 'substantial need [for] the materials' and 'undue hardship [in obtaining] the substantial equivalent of the materials by other means.'" *In re Grand Jury Subpoena (Mark Torf/Torf*

---

[2] The parties refer to both of these privileges in their briefs. The attorney-client privilege and the work-product privilege are distinct privileges that cannot be used interchangeably. *See Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 383–84 (D. Ariz. 2010) ("The work product privilege is very different from the attorney-client privilege. The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. The work product privilege, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent."). The Court sees this as a dispute over the application of the work-product doctrine and will address it accordingly.

[3] "Federal law applies to privilege based discovery disputes involving federal claims, even if allied with pendent state law claims." *Enns Pontiac, Buick, & GMC Inc. v. Flores*, No. CV-F-07-01043 LJO, 2011 WL 6181924, at *2 (E.D. Cal. Dec. 13, 2011); Fed. R. Evid. 501.

*Envtl. Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(3)). The work-product doctrine is "intensely practical," "grounded in the realities of litigation in our adversary system." *United States v. Nobles*, 422 U.S. 225, 239 (1975). "One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* at 238–39.

The Ninth Circuit has explained that, "to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." 357 F.3d at 907 (internal quotation marks and citations omitted). Even if these two characteristics are present, a party may still waive the work-product doctrine's protections. *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011).

KeyPoint claims this document is privileged because it was prepared in anticipation of litigation. However, Hegedus is not an attorney. Therefore, the Court must determine whether Hegedus conducted the investigation and prepared the report at the direction of counsel. KeyPoint has never identified what attorney directed Hegedus (or directed another KeyPoint employee to direct Hegedus) to conduct the internal investigation. Rather, after in camera review of the report, it appears that an individual named Marci Haabestad directed Hegedus to conduct the investigation. KeyPoint has not identified Haabestad as an attorney, nor has it identified an attorney who delegated the

task of gathering information to respond to the EEOC complaint to Haabestad. KeyPoint carries the burden of providing such information, if it exists. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1080 (N.D. Cal. 2002) (holding that party asserting work product doctrine bears burden of establishing that the privilege applies). Because KeyPoint has not established that an attorney or an attorney's agent prepared the document, the document is not protected by the work product doctrine. *See Nobles*, 422 U.S. at 238-39. The Court, therefore, must deny the Motion for Protective Order.

## V. ORDER

THE COURT HEREBY ORDERS:

1. Rafferty's Motion to Reopen Discovery (Dkt. 48) is GRANTED.

2. KeyPoint's Motion for Protective Order (Dkt. 47) is DENIED.

3. Discovery is hereby REOPENED between Rafferty and KeyPoint and shall remain open for 60 days following the issuance of this Order.

DATED: June 19, 2018

_____
David C. Nye
U.S. District Court Judge